IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **POLYGON.IO, INC.,**<br><br>    *Plaintiff*,<br><br>v.<br><br>**JAYNTI KANANI, SANDEEP NAILWAL, ANURAG ARJUN, MIHAILO BJELIC, MATIC NETWORK (BVI) LTD., MATIC-NETWORK INDIA LLP, and MATIC NETWORK PTE. LTD.,**<br><br>    *Defendants.* | Civil Action No. |

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff Polygon.io, Inc. sues Defendants Jaynti Kanani, Sandeep Nailwal, Anurag Arjun, Mihailo Bjelic, Matic Network (BVI) Ltd., Matic-Network India LLP, and Matic Network Pte. Ltd. and alleges as follows:

**JURISDICTION**

1) This is an action for federal trademark infringement and false designation of origin, in violation of 15 U.S.C. §§ 1051 *et seq.,* and common law trademark infringement and unfair competition.

2) This Court has subject matter jurisdiction over the federal trademark infringement and false designation of origin claims pursuant to 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the remaining common law claims pursuant to 28 U.S.C. § 1367.

3) This Court has personal jurisdiction over Defendants because Defendants, on information and belief, transact business within Georgia or have committed a tortious injury within Georgia caused by an act or omission outside the state and regularly do or solicit business, or engage in other persistent courses of conduct, or derive substantial revenue from goods and/or services used or consumed in Georgia.

4) As foreign nationals and entities not subject to the general jurisdiction of any state's courts, this Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(2) of Federal Rule of Civil Procedure and exercising jurisdiction over Defendants is consistent with the United States Constitution and its laws.

5) Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(3) and 1391(c)(3).

## THE PARTIES

6) Plaintiff Polygon.io, Inc. ("Plaintiff") is Delaware corporation with its principal place of business at 331 Elizabeth Street, Suite A, Atlanta, Georgia 30307.

7) Upon information and belief, Defendant Jaynti Kanani is a foreign national residing in Mumbai, India.

8) Upon information and belief, Defendant Sandeep Nailwal is a foreign national residing in Mumbai, India.

9) Upon information and belief, Defendant Anurag Arjun is a foreign national residing in Mumbai, India.

10) Upon information and belief, Defendant Mihailo Bjelic is a foreign national residing in Serbia.

11) Upon information and belief, Defendant Matic Network (BVI) Ltd. is a legal entity organized and existing under the laws of the British Virgin Islands.

12) Upon information and belief, Defendant Matic-Network India LLP is a legal entity organized and existing under the laws of India.

13) Upon information and belief, Defendant Matic Network Pte. Ltd. is a legal entity organized and existing under the laws of Singapore.

## RELEVANT FACTS

### Plaintiff's Trademarks

14) Plaintiff, founded in January 2016, is a well-known application service provider in the financial markets and cryptocurrency spaces.

15) Plaintiff supplies companies and developers with APIs that provide real-time and historic market data for stocks, currencies, foreign currency exchanges, cryptocurrencies, and other financial market data. An "API" is an "application programming interface," a software intermediary that allows two computer applications or programs to communicate with one another.

16) In March 2016, Plaintiff launched the first version of its stock API under the POLYGON.IO trademark (the "POLYGON.IO Mark").

17) In December 2016, Plaintiff began using the POLYGON trademark (the "POLYGON Mark") in connection with its business operations and financial market data-related goods and services, in addition to the POLYGON.IO Mark.

18) Plaintiff registered the domain name <polygon.io> in December 2016 and received its first visitors to its website at that location in January 2017. Plaintiff began offering its financial market data-related goods and services to the public in commerce under the POLYGON.IO Mark at least as early as January 2017.

19) Plaintiff has been in continuous operation since January 2016 and has provided its goods and services in commerce under the distinctive POLYGON.IO Mark and POLYGON Mark since at least as early as January 2017. The POLYGON.IO Mark and POLYGON Mark will hereinafter be referred to collectively as "Plaintiffs Marks."

20) Plaintiff is well-known in the financial technology industry. Over the last six years, Plaintiff's goods and services have become some of the most trusted and widely used APIs in the financial technology industry, including but not limited to the cryptocurrency industry.

21) Through Plaintiff's widespread and continuous promotion and use of Plaintiff's Marks in the United States and around the world, Plaintiff's Marks have come to identify goods and services originating exclusively from Plaintiff and are distinctive of Plaintiff's goods and services.

22) As a result of Plaintiff's extensive advertising and promotion of its goods and services under Plaintiff's Marks, Plaintiff's Marks have achieved considerable goodwill throughout the United States and the world.

23) Plaintiff has not abandoned Plaintiff's Marks.

24) Plaintiff owns U.S. Trademark Registration No. 6,612,448 for the POLYGON.IO Mark, a copy of which is attached hereto as Exhibit A (the "POLYGON Registration").

25) The POLYGON Registration is valid and enforceable.

26) Plaintiff has not abandoned the POLYGON Registration.

27) The POLYGON Registration is *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of Plaintiff's ownership of the mark, and of Plaintiff's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration certificate.

### Defendants' Use of their Infringing Mark

28) Defendants Jaynti Kanani, Sandeep Nailwal, Anurag Arjun, and Mihailo Bjelic hold themselves out as the co-founders of Polygon Technology ("PolyTech"), offering the Polygon platform, "a decentralized Ethereum scaling platform that enables developers to build scalable user-friendly dApps with low transaction fees without ever sacrificing on security." A "dApp" or "decentralized application" is a digital application or program that exists and runs on a blockchain or peer-to-peer network of computers. They can be developed for a variety of purposes including finance, gaming, and social media.

29) Upon information and belief, Defendants Jaynti Kanani, Sandeep Nailwal, Anurag Arjun, and/or Mihailo Bjelic established Defendants Matic Network (BVI) Ltd., Matic-Network India LLP, and/or Matic Network Pte. Ltd. for conducting certain aspects of PolyTech's business operations.

30) Upon information and belief, a significant portion of PolyTech operates as an unincorporated association and not through a legal entity. That portion of PolyTech's business operations is conducted through its founders and members, including Defendants Jaynti Kanani, Sandeep Nailwal, Anurag Arjun, and/or Mihailo Bjelic.

31) Upon information and belief, Defendants Jaynti Kanani, Sandeep Nailwal, Anurag Arjun, and Mihailo Bjelic founded PolyTech in 2017 as "MATIC Network" and subsequently began offering the $MATIC blockchain token.

32) Defendants operated as MATIC Network until February 2021, when they rebranded to "Polygon Technology."

33) In addition to using the name "Polygon Technology," Defendants also refer to the business as simply "Polygon" on the website (polygon.technology), in press releases, and in other marketing and promotional materials.

34) Defendants offer a "suite" of Ethereum- scaling solutions under the "Polygon" mark, including but not limited to Polygon PoS, Polygon Hermez,

Polygon Avail, Polygon Edge, Polygon Nightfall, Polygon Miden, and Polygon Zero.

35) Defendants offer for sale, sell, market, and distribute goods and services to customers in the United States, including in this judicial district, and around the world.

36) Defendants' "Polygon" mark is identical to or substantially indistinguishable from Plaintiff's Marks.

37) Defendants operate in the same industry as Plaintiff, and they service the same types of consumers as Plaintiff. Defendants' goods and services are related to Plaintiff's goods and services. Indeed, Defendants' $MATIC blockchain token is tracked in certain of Plaintiff's API goods and services.

38) Defendants' goods and services are offered for sale and/or sold in the same channels of trade to the same class of consumers as Plaintiff's goods and services.

39) Defendants began using their "Polygon" mark after Plaintiff's first use of both its POLYGON.IO Mark and POLYGON Mark.

40) Plaintiff is aware of multiple instances of actual confusion resulting from Defendants' use of the "Polygon" mark. The instances of actual confusion began almost immediately after the February 2021 rebrand, including but not limited

to 10-12 requests made to Plaintiff's support team in the first three months, all of which were intended for Defendants.

41) At the time of the rebrand in February 2021, Defendants offered a relatively obscure cryptocurrency. Shortly thereafter, the business operations grew, and the instances of actual confusion increased exponentially, including but not limited to a high volume of support requests – from over 20 such requests in May 2021, to over 40 such requests in January 2022.

42) Additionally, Plaintiff has witnessed multiple instances of "mistaken identity" on social media where Plaintiff is tagged in posts on LinkedIn promoting Defendants and their business, fielded interview requests from news outlets meant for Defendants, and received multiple applications from individuals seeking employment with Defendants.

43) The most troubling instances of actual confusion were the negative and angry comments intended for Defendants and posted by Defendants' disgruntled customers on Plaintiff's public-facing channels of communication – all visible to Plaintiff's own customers and potential customers. Similarly, Plaintiffs' support channels have recently been flooded with automated attacks referencing "burn in every transfer," which Plaintiff understands to be a reference to Defendants' recent decision to burn $MATIC tokens on every transaction.

44) On information and belief, Defendants had knowledge of Plaintiff's Marks when they re-branded the MATIC Network to Polygon Technologies and began using their "Polygon" mark.

45) Indeed, the look and feel of the re-designed PolyTech website is very similar to that of Plaintiff, implementing similar fonts and typefaces, color schemes, branding, and other design elements.

46) The PolyTech website even contains identical language to Plaintiff's website, including Plaintiff's well-known "Built by Developers for Developers" tagline, which Plaintiff adopted at least as early as July 2019.

47) Plaintiff contacted at least two different PolyTech representatives via LinkedIn messaging and email to object to their rebranding and to alert PolyTech of instances of actual confusion resulting from the rebrand. Plaintiff has not received any response.

48) Plaintiff has been forced to file this action to preserve its trademark rights and prevent further consumer confusion.

## COUNT I
## INFRINGEMENT OF A REGISTERED TRADEMARK
## IN VIOLATION OF 15 U.S.C. § 1114

49) Paragraphs 1-48 are realleged and incorporated herein by reference.

50) Defendants are using a mark or symbol in commerce that is likely to cause confusion, or to cause mistake, or to deceive, and likely to cause purchasers and potential purchasers to falsely believe that Defendants' goods and services are sponsored by, approved by, or affiliated with Plaintiff, or that Plaintiff's goods and services are sponsored by, approved by, or affiliated with Defendants.

51) Defendants are using in commerce a mark or symbol that is identical to, substantially indistinguishable from, a colorable imitation of, and/or confusingly similar to the mark in the POLYGON Registration, and the unauthorized use of such mark by Defendants in commerce is likely to cause damage and other irreparable injury to Plaintiff unless such use is enjoined by this Court, Plaintiff having no adequate remedy at law.

52) Defendants' use of a mark in commerce that is identical to, substantially indistinguishable from, a colorable imitation of, and/or confusingly similar to the mark in Plaintiff's POLYGON Registration constitutes an infringement of Plaintiff's rights in violation of 15 U.S.C. § 1114.

53) Defendants' aforesaid acts are being committed with knowledge of Plaintiff's POLYGON.IO Mark and/or POLYGON Registration. Defendants' acts are, therefore, intentional, willful, and maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

54) Under 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action.

55) Further, based on the nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to reasonable attorneys' fees, treble damages, and/or enhanced profits.

56) Plaintiff has been or is likely to be irreparably damaged by Defendants' use of an infringing mark in the United States and will continue to be irreparably damaged unless Defendants are immediately and permanently enjoined by this Court.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## IN VIOLATION OF 15 U.S.C. § 1125(a)

57) Paragraphs 1-48 are realleged and incorporated herein by reference.

58) In marketing, selling, and offering goods and services in commerce in the United States, Defendants have used in connection with their goods and services a false designation of origin that is likely to cause confusion, to cause mistake, or to deceive others to believe that Defendants' good and services are sponsored by, approved by, originate with, or are affiliated with Plaintiff, or that Plaintiff's goods are sponsored by, approved by, originate with, or are affiliated

with Defendants. Defendants have caused their goods and services to be offered for sale in commerce with knowledge of such false designation of origin or description or representation.

59) Defendants have willfully promoted in commerce the sale of their goods and services in a manner so as to falsely designate an origin or an association with Plaintiff or with Plaintiff's Marks, so as to be likely to cause confusion or mistake among purchasers as to the true origin, source, sponsorship, or affiliation of Plaintiff's or Defendants' goods and services, all to Defendants' profit and to Plaintiff's damage.

60) Plaintiff has been and/or will be irreparably damaged by the use of such false designation and/or representation and will continue to be irreparably damaged unless Defendants are preliminarily and permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

61) Defendants' acts constitute unfair competition, false designation of origin, and/or false description in violation of 15 U.S.C. § 1125(a).

62) In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action.

63) Further, based upon the willful nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to reasonable attorney's fees and the trebling of such profits or damages.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

64) Paragraphs 1-48 are realleged and incorporated herein by reference.

65) Defendants' use of a mark that is confusingly similar to Plaintiff's Marks, in connection with goods and services which are the same as or are competitive with the goods and services of Plaintiff, is likely to cause confusion, to cause mistake, and to deceive.

66) Defendants are offering their goods for sale with full knowledge of Plaintiff's Marks.

67) Defendants have promoted and offered for sale their goods and services in such a manner as to suggest an association, affiliation, or sponsorship with, or approval by Plaintiff, or so as to cause, or be likely to cause, confusion or mistake among purchasers as to the origin or sponsorship of Plaintiff's or Defendants' goods and services, all to Defendants' profit and to Plaintiff's damage.

68) Defendants' aforesaid conduct constitutes infringement of Plaintiff's common law rights in and to Plaintiff's Marks and further constitutes common law

unfair competition, all of which has irreparably damaged and/or will irreparably damage Plaintiff, together with its goodwill and reputation, unless Defendants are enjoined and restrained by this Court, Plaintiff having no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment of the Court as follows:

1) That Defendants, and all those persons in active concert or participation with Defendants, be permanently enjoined and restrained from advertising, marketing, offering for sale, selling, or distributing goods or services under or in connection with the "Polygon" mark, or any other designation, trademark or service mark that is likely to cause confusion, mistake, or deception as to the source or sponsorship of Plaintiff's or Defendants' goods or services, or from otherwise infringing Plaintiff's Marks;

2) That an accounting be conducted and judgment rendered against Defendants, jointly and severally, for:

    a) all profits received from the sale of goods and services under or in connection with the "Polygon" mark in the United States;

    b) all damages sustained by Plaintiff in an amount to be proven at trial from, *inter alia*, Defendants' trademark infringement, unfair

competition, false designation of origin, and false description or representation, pursuant to 15 U.S.C. § 1051, *et seq.*; and

c) any other actual and compensatory damages in an amount not presently known, but to be computed during the pendency of this action.

3) That any damages assessed against Defendants for trademark infringement and unfair competition be trebled as provided by 15 U.S.C. § 1117, and any profits be enhanced as warranted;

4) That Defendants be directed to file with the Court and serve upon Plaintiff, no later than thirty (30) days after the issuance of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which each has complied with the injunctions requested in the immediately preceding paragraphs and any other provision of this Court's Order;

5) That Plaintiff have and recover its costs in this suit, including but not limited to reasonable attorney's fees and expenses; and

6) That Plaintiff have such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 8, 2022.

                              Respectfully submitted,
                              THE SLADKUS LAW GROUP

                              *s/Carrie A. Hanlon*
                              Carrie A. Hanlon
                              Ga. Bar No. 289725
                              E-mail: carrie@sladlaw.com
                              Jeffrey B. Sladkus
                              Ga. Bar No. 651220
                              E-mail: jeff@sladlaw.com
                              Jason H. Cooper
                              Ga. Bar No. 778884
                              E-mail: jason@sladlaw.com

                              1397 Carroll Drive
                              Atlanta, GA 30318
                              Telephone: (404) 252-0900
                              Facsimile: (404) 252-0970

                              ***Attorneys for Plaintiff***